GENERAL SPECIALTIES COMPANY, INC. v. NELLO L. TEER COMPANY

No. 7826SC655

(Filed 15 May 1979)

1. **Contracts § 18.1— claim for extra costs—waiver of written notice**
   Defendant contractor waived any rights it had under a subcontract to written notice of the subcontractor's claim for extra costs incurred for the storage of building materials in an off-site bonded warehouse by its agreement with the subcontractor for the off-site storage.

2. **Contracts § 18.1— recovery for extra costs**
   In a subcontractor's action against a contractor to recover extra costs incurred in the performance of the subcontract, the evidence supported the trial court's findings that plaintiff subcontractor was entitled to recover extra costs for the storage of building materials in a dry warehouse off the project site and for additional work caused by a change in the plans and specifications for the corner ridges of the building being constructed.

3. **Contracts § 18.2— denial of recovery for extra costs—sufficiency of supporting evidence**
   In a subcontractor's action against a contractor to recover extra costs for glass curtain wall work in a building constructed by the contractor, the evidence supported the trial court's determination that plaintiff subcontractor was not entitled to recover extra costs incurred to realign support steel for the curtain wall which it alleged defendant installed with improper tolerance because (1) incompatability of tolerances of the support steel and the glass curtain wall resulted from the project design rather than from defendant's failure to follow contract specifications, and (2) defendant contractor issued no written order for the extra work as required by the terms of the subcontract.

APPEAL by defendant and plaintiff from *Lewis, Judge.* Judgment entered 26 October 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 3 April 1979.

Defendant, Nello L. Teer Company, was the general contractor for the construction of the North Carolina Blue Cross and Blue Shield, Inc. building in Chapel Hill, North Carolina. Defendant employed plaintiff, General Specialties Company, Inc., as a subcontractor to construct a glass curtain wall around the building. The glass curtain wall was to be the exterior of the building, an architecturally unique structure. Plaintiff and defendant entered into the subcontract on 28 January 1972 for plaintiff to furnish and install the curtain wall in accordance with the general conditions, drawings and specifications prepared by the architects and engineers, Odell Associates, Inc.

Construction of the building began in February 1972 and was completed in October 1973. Plaintiff performed its work under the subcontract during this period. During the performance of the subcontract, plaintiff complained of extra costs incurred which it claimed defendant should pay by the terms of the subcontract. On 26 August 1975, plaintiff brought this action against defendant alleging six separate claims for relief of certain extra costs. Plaintiff's claims against defendant were as follows:

1. extra costs incurred for having to store building materials in an off-site bonded warehouse, in the amount of $8,865.13;

2. extra work and costs incurred because defendant and its other subcontractors used plaintiff's building scaffolding during construction of the building, in the amount of $23,889.86;

3. extra work and costs incurred due to a change in the original design of the corner ridges for the building, in the amount of $10,886.32;

4. extra costs incurred to realign certain structural work improperly done by Teer to enable proper installation of the curtain wall, in the amount of $57,249.40;

5. extra costs incurred supervising defendant's work forces to correct work defendant had improperly installed, in the amount of $2,173.22;

6. windstorm damage to plaintiff's scaffolding claimed under defendant's Builders Risk Insurance Policy, in the amount of $1,277.08.

Defendant denied plaintiff incurred any of these extra costs and alleged that if plaintiff did incur such extra costs, it is not entitled to recover because plaintiff failed to comply with the notice requirement for claims under the subcontract, and plaintiff executed a release of claims against defendant.

The case was tried before Judge Lewis without a jury. Plaintiff prevailed on its first and third claims. Plaintiff's second, fourth, fifth and sixth claims were denied.

Defendant appeals from the order of the court allowing plaintiff to recover on the first and third claims for relief.

Plaintiff appeals from the denial of its fourth claim for relief.

*Robert D. Potter for plaintiff.*

*Nye, Mitchell & Bugg, by John E. Bugg and Charles B. Nye, for defendant.*

MARTIN (Harry C.), Judge.

Neither party requested a jury trial and the case was tried by Judge Lewis deciding both questions of law and fact. Where the trial judge sits as the trier of the facts, his findings of fact are conclusive on appeal when supported by competent evidence. This is true even though there may be evidence in the record to the contrary which could sustain findings to the contrary. *Whitaker v. Earnhardt*, 289 N.C. 260, 221 S.E. 2d 316 (1976); *Associates, Inc. v. Myerly and Equipment Co. v. Myerly*, 29 N.C. App. 85, 223 S.E. 2d 545, *dis. rev. denied and appeal dismissed*, 290 N.C. 94, 225 S.E. 2d 323 (1976). The trial judge is both judge and jury, and he has the duty to pass upon the credibility of the witnesses who testify. He decides what weight shall be given to the testimony and the reasonable inferences to be drawn therefrom. The appellate court cannot substitute itself for the trial judge in this task. *Knutton v. Cofield*, 273 N.C. 355, 160 S.E. 2d 29 (1968). Judge Lewis had the duty to find facts, state separately his conclusions of law and enter judgment. N.C. Gen. Stat. 1A-1, Rule 52(a)(1); *Coggins v. City of Asheville*, 278 N.C. 428, 180 S.E. 2d 149 (1971). It is incumbent on this Court to review the evidence to determine if it supports the findings of fact presented by assignments of error on appeal. *Whitaker v. Earnhardt, supra.* We discuss the required findings of fact separately.

[1, 2]  In plaintiff's first claim, it alleges extra expense for storage of materials in a dry warehouse off the project site, in order to comply with defendant's work schedule. The following evidence sustains this finding:

> There was no dry place on the site where the material could be stored; therefore, we asked permission to store the material off the site. . . .
>
> . . . The agreement with Mr. DuBose, Assistant Vice President of Nello Teer, was that we would be allowed to store the material in a bonded warehouse off the site since there was no facility at the site to store it.
>
> . . . .
>
> . . . Irvin Chatham determined (job superintendent for Nello Teer) that it would not be practical to store this material within the building. . . .
>
> . . . .
>
> . . . Our total cost for storing the material and glass at the warehouse was $8,520.98.

Teer was a party to this agreement through its vice president, DuBose. It had knowledge of the off-site storage before it was ever begun. Defendant relies on the provision in the contract requiring notice of any claim against contractor (Teer) to be given in writing within seventy-two hours after the cause of the claim occurred, citing *Construction Co. v. Highway Comm.*, 28 N.C. App. 593, 222 S.E. 2d 452 (1976). It is true that in *Construction Co.* the Court upheld a notification clause of the contract in litigation. However, in that case there was no evidence of any additional agreement between the parties covering alleged extra work. To the contrary, officials of the Commission told plaintiff that it would be a "waste of time" to discuss it. Here, Teer waived any rights it had under the subcontract to written notice by its agreement through DuBose with plaintiff for the off-site storage.

Plaintiff's third claim for relief is admitted by defendant's answer, except as to the amount of plaintiff's damages. This claim involved changes in the plans and specifications for the corner ridges. Plaintiff was ordered to make these changes by Teer in a

General Specialties Co. v. Teer Co.

letter to plaintiff dated 19 March 1973. Plaintiff's evidence sustained a finding that the required changes resulted in additional costs to plaintiff of $10,886.32.

[3] Plaintiff's fourth claim involves defendant's installing the curtain wall support steel with improper tolerance, requiring plaintiff to realign and modify the curtain wall grid system at an alleged cost of $57,249.40. Judge Lewis found that all the parties knew of the required tolerances in the construction of the curtain wall, and that the installation of the structural and support steel was probably incompatible with the curtain wall, and that this probably resulted from the project design. These findings are amply supported in the record by the evidence of DuBose and Smith, who testified in detail as to the requirements of the support steel in relation to the curtain wall.

Judge Lewis further found this claim was controlled by Article 19 of the subcontract which stated the subcontractor (plaintiff) could not recover for extra work unless the contractor gave a written order for the work. The record sustains this finding as there is no evidence of any waiver by defendant, Teer, of this requirement. There is no evidence that Teer issued such written order with respect to this work by plaintiff, or that plaintiff requested a written order from Teer.

The remaining findings are not the subject of assignments of error nor argued in the briefs of either party. The findings of fact support the separate conclusions of law stated by Judge Lewis allowing plaintiff to recover on its first and third claims in the total amount of $19,751.45 and denying plaintiff's fourth claim for relief. *Knutton v. Cofield, supra.*

This complicated case was carefully tried by the able and experienced trial judge, and his judgment is

Affirmed.

Judges VAUGHN and ERWIN concur.