WILLIAM M. FLOTO, PEGGY V. FLOTO, AND STEVEN M. FLOTO, PLAINTIFFS
v. PIED PIPER RESORT, INC., DEVOS ENTERPRISES, INC., MARVIN
J. DEVOS, SYLVIA DEVOS, MARVIN DEVOS AND GLADYS DEVOS,
DEFENDANTS

No. 8930SC5

(Filed 7 November 1989)

### Corporations § 18 (NCI3d) — option to purchase stock — option not exercised within reasonable time

The trial court properly concluded that an option to purchase stock in defendant corporation had not been exercised by plaintiffs where the option and its amendment did not provide for a termination date; plaintiffs did not avail themselves of the benefits of the stock option for over seventeen months; and this was more than a reasonable amount of time to act. N.C.G.S. § 25-2-311.

**Am Jur 2d, Corporations §§ 690, 691.**

APPEAL by plaintiffs from *Downs, James U., Judge.* Judgment entered 31 December 1987 in Superior Court, CHEROKEE County. Heard in the Court of Appeals 25 August 1989.

Plaintiffs instituted this civil action on 11 March 1987 to contest the validity of a corporation election pursuant to G.S. sec. 55-71. They also requested that the court determine the respective rights of the parties concerning stock ownership and voting rights. This matter was heard in a non-jury trial. Plaintiffs appeal from a decision in favor of the defendants.

*James L. Blomeley, Jr. for plaintiff-appellants.*

*Jones, Key, Melvin & Patton, P.A., by Chester Marvin Jones, for defendant-appellees.*

JOHNSON, Judge.

Judge Downs determined the corporation election to be valid. He further determined that the plaintiffs, collectively, owned 410 shares of Pied Piper Resort, Inc. ("Pied Piper") stock. Plaintiffs, however, in their complaint alleged ownership of 2,573 shares of Pied Piper stock. The pertinent underlying facts are as follows:

Pied Piper, a North Carolina corporation, consisted of various real and personal property assets in Cherokee County. Plaintiffs, William Floto and Peggy Floto, served as President and Secretary-Treasurer, respectively, of Pied Piper. Mr. and Mrs. Floto also served as corporate directors. The sole stockholder of the corporation was Devos Enterprises, Inc. ("Devos Enterprises"), another North Carolina corporation. Defendant Marvin J. Devos served as President of Devos Enterprises.

Prior to October 1985, William and Peggy Floto exchanged various parcels of real estate and other assets with Devos Enterprises. Among the exchanges was a transaction involving a small apartment complex known as the Sportsman Apartments and a parcel of land. The apartment complex was located in Anna Marie Beach, Florida, and was owned by the Flotos. The parcel of land was located in Cherokee County, North Carolina, and was owned by Devos Enterprises. This parcel of land later became known as Pied Piper. The Flotos gave Devos Enterprises a contract for deed on the Sportsman Apartments for which a stock option to purchase 2,163 shares of Pied Piper stock was exchanged. All parties agreed to an option price of approximately $84,600.00, which was to be paid prior to the Flotos' exercising the stock option. The stock option was undated as to the date of issuance and undated as to how long it was to remain in existence.

In October 1985, Pied Piper entered into a contract with Homer and Doris Shaffer, whereby the Shaffers were to purchase all outstanding shares of Pied Piper stock. In contemplation of the sale to the Shaffers, the option previously extended to the Flotos to purchase 2,163 shares of Pied Piper common stock was reduced to 2,090 shares. This reduction was contingent upon Devos Enterprises conveying an 8.22 acre tract of land in Cherokee County to Pied Piper, as an additional corporate asset. The deed for the 8.22 acre tract was never executed and/or delivered to Pied Piper. William Floto, thereafter, contacted Attorney William McKeever of Murphy, North Carolina, concerning the possibility of him representing Pied Piper in the transaction with the Shaffers. Numerous instructions regarding closing the pending sale to the Shaffers were subsequently delivered to Mr. McKeever. Although the instructions differed, they in effect provided that upon the closing of the Shaffer deal, William and Peggy Floto would sell to Devos Enterprises their stock option for approximately $84,600.00.

At this time, however, the Flotos still had not tendered the option price to Devos Enterprises.

On 29 May 1986, the Board of Directors of Pied Piper agreed to extend 410 shares of stock in the corporation from Devos Enterprises in exchange for the Flotos' agreeing to sell or exchange the Pied Piper Center and Laundry. Stock certificates for 410 shares of Pied Piper were issued to the Flotos, shortly thereafter.

The proposed sale of all outstanding stock in Pied Piper to the Shaffers was never consummated. As a result, a $10,000.00 deposit on the contract for sale was forfeited by the Shaffers and equally distributed between Devos Enterprises and the Flotos. The payment of approximately $84,600.00 was never paid to the Flotos by Devos Enterprises. In addition, the Flotos never paid the option price or exercised their option to purchase the 2,163 shares of Pied Piper stock. An effort to annul and void the contract for deed for the Sportsman Apartments and the recovery of monetary damages and equitable relief are pending in a Florida court.

The issue before this Court, however, is whether the trial court erred in concluding that the option to purchase stock in Pied Piper had not been exercised by the plaintiffs. We find no error and, therefore, affirm the judgment.

Questions of law and fact were decided by Judge Downs since none of the parties requested a jury trial. "Where the trial judge sits as the trier of the facts, his findings of fact are conclusive on appeal when supported by competent evidence. This is true even though there may be evidence in the record to the contrary which could sustain findings to the contrary." *General Specialties Company v. Teer Company*, 41 N.C. App. 273, 275, 254 S.E.2d 658, 660 (1979). The trial judge acts as both judge and jury and therefore must evaluate the credibility of all witnesses. Through this evaluation, the judge must determine the relative weight and reasonable inferences to be drawn from each testimony. *Id.* Pursuant to G.S. sec. 1A-1, Rule 52(a)(1), Judge Downs had a duty to find facts, state separately his conclusions of law and enter an appropriate judgment. On appeal, this Court must review the evidence to determine if it supports the findings of fact and not substitute itself for the trial judge. *General Specialties Co., supra.*

In the case *sub judice*, the record clearly establishes that there is no dispute as to the existence of plaintiffs' option to purchase

2,163 shares of Pied Piper stock. There is also no dispute that the parties amended the terms of the stock option and reduced the shares to 2,090. The only dispute is whether the plaintiffs have exercised the option.

Judge Downs determined this issue to be governed by G.S. sec. 25-2-311, which provides that where an option contract lacks a specified duration, the law will impose upon the optionee a "reasonable and seasonable" amount of time in which to act. The determination of whether time is reasonable is conditioned upon the individual facts. *Furr v. Carmichael*, 82 N.C. App. 634, 638, 347 S.E.2d 481, 484 (1986).

Under the facts in this case, the stock option was given to plaintiffs, William and Peggy Floto, prior to October 1985. The terms of the option were subsequently amended. Neither the original agreement nor the amended agreement addressed a termination date and, as such, Judge Downs properly applied G.S. sec. 25-2-311. Therefore, plaintiffs were required to act on the option within a reasonable and seasonable amount of time.

Judge Downs found that between October 1985 and March 1987, plaintiffs neither paid toward exercising the option nor exercised their rights pursuant to either the original or amended agreement. It was further found that in May 1986, stock certificates for 410 shares of stock in Pied Piper were issued to the Flotos in exchange for the Pied Piper Center and Laundry. However, no stock certificates were issued for the additional 2,163 shares plaintiffs assert ownership of. These findings are amply supported in the record by undisputed statements from both the plaintiffs and defendants. All parties acknowledged that no money was exchanged for the stock option and no stocks were purchased in reliance upon the terms of the stock option.

While it is clear that plaintiffs, as the optionees, had no obligation to purchase the Pied Piper stock, it is also clear that defendants, as the optionors, had no obligation to be indefinitely bound to sell the stock. *Sheppard v. Andrews*, 7 N.C. App. 517, 520, 173 S.E.2d 67, 69 (1970). Plaintiffs could have availed themselves of the benefits of the stock option for over seventeen months. We find this to be more than a reasonable and seasonable amount of time to act.

Following a careful review of the evidence in the record, we conclude that Judge Down's findings of fact and conclusions of law support his judgment. The judgment below is

Affirmed.

Judges EAGLES and GREENE concur.